Emmett THURMON, dba The Plains Hotel,
Appellant (Plaintiff below),

v.

Burton L. CLARK and Marcelle Clark, dba
Plains Barber Shop, Appellees
(Defendants below).

No. 4126.

Supreme Court of Wyoming.

Feb. 1, 1973.

Rehearing Denied March 16, 1973.

See 507 P.2d 142.

Louis A. Mankus, Cheyenne, for appellant.

John J. Rooney, of Rooney & Horiskey, Cheyenne, for appellees.

Before PARKER, McEWAN and GUTHRIE, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

This is a case in which the plaintiff-landlord sought to recover from defendants-tenants 10 months' rent at $200 per month. The defendants-tenants contended that the landlord had in years past improperly charged them for electricity and telephone service in the amount of $2,018.80.

On December 1, 1962, the plaintiffs' predecessor in interest and the defendants entered into a lease where the defendants leased for their operation of a barber shop a portion of the Plains Hotel building in Cheyenne, Wyoming from the plaintiff. The lease period was from December 1, 1962 to December 31, 1971. As consideration for said lease the defendants were to pay the plaintiff $200 per month as rental. The written lease agreement executed by the defendants and the plaintiff's predecessor provided that plaintiff would furnish free of cost to the defendants heat, and hot and cold water. The lease was silent as to the furnishing of electricity and telephone service. For several years the defendants were billed $1.40 per month for telephone service, and from $10 to $29 per month for electricity, which amounts were paid by the defendants for approximately 7½ years. However, for a period of about 10 months, commencing in April 1970 until March 1971, the defendants made no rental payments. They then made payments of $200 per month until the end of the lease term. By way of counterclaim the defendants alleged that plaintiff had illegally collected the sum of $2,018.80 from them for electricity and telephone service. The defendants apparently took the position that they had, in effect, prepaid their rent for 10 months because they had paid $2,018.80 more than they should have paid under the lease.

The matter was tried before the court sitting without a jury, and judgment was entered that the plaintiff take nothing on his complaint and the defendants take

nothing on their counterclaim, and the action be dismissed on its merits as to both the complaint and the counterclaim. The plaintiff filed a motion for new trial and to alter the judgment, which motion was denied, whereupon the plaintiff filed a notice of appeal from that portion of the judgment denying and dismissing his complaint.

The issue before us is very narrow and appears to be: Were the defendants, by way of counterclaim or setoff, entitled to credit towards their rent for the monies previously paid by them to the plaintiff for electricity and telephone service?

The defendants' contention appears to be twofold. They took the position that under the terms of the lease agreement they were required to pay ony $200 per month, and, secondly, the plaintiff was prohibited from purchasing electricity from Cheyenne Light, Fuel and Power Company and reselling it to the defendants.

The lease agreement contained no provision concerning the furnishing of electricity or telephone service. The defendants paid for such services for a number of years without any serious objection. The defendant, Mr. Clark, testified upon examination by his own counsel that, "I was told at the very beginning that I had to pay lights because they had a meter down stairs [sic] and they would read that meter." The monthly billings by the plaintiff to the defendants for telephone services were relatively small. The defendants' phone calls were handled through the hotel switchboard, and the basic charges made were $1.40 per month and 10¢ per phone call. The record shows that when the defendants resumed paying $200 per month rental charge in March of 1971 they also paid the basic telephone charges. Therefore, telephone charges seem to not be contested. We therefore conclude the parties themselves resolved any ambiguity as to the electricity and telephone charges, and tacitly agreed that defendants were to pay for such services.

We then turn to the question of whether or not the plaintiff was prohibited from charging the defendants for electricity. The defendants contended that plaintiff could not legally charge them for electricity because the rules and regulations of Cheyenne Light, Fuel and Power Company and the Public Service Commission of the State of Wyoming prohibited the plaintiff from so doing. The plaintiff did purchase electric power from Cheyenne Light, Fuel and Power Company and then remetered it to the defendants and charged them accordingly. Mr. Milton Nichols, the office manager and assistant secretary of the power company, was called as a witness by the defendants. He testified that in April or May he received a complaint from the Wyoming Public Service Commission that the Plains Barber Shop had been overcharged for the use of electricity being metered and billed by the Plains Hotel. He determined there was a submeter in the basement of the hotel through which electricity was being metered to the defendants' barber shop, which meter was not the property of his company, and therefore was in violation of the company's rules and regulations filed with the Wyoming Public Service Commission. As a result of this determination, on May 7, 1970 he addressed a letter to Mr. Emmett Thurmon, owner of the Plains Hotel, in which he stated:

> " * * * As you have recently been advised, this constitutes a violation of the regulations of Cheyenne Light, Fuel and Power Company on file with the Public Service Commission. Under these regulations, a separate sale of electric energy may not be made by a landlord to a tenant. Consequently, you are most respectfully requested to cease this practice. * * *"

A copy of this letter was sent to the manager of the Plains Hotel, the defendants, and the Wyoming Public Service Commission. On May 8, Mr. Thurmon, as owner of the Plains Hotel, responded to Mr. Nich-

ols' letter, a copy of which was sent to the defendants. He advised the hotel manager to cease charging for electricity to the barber shop as had been done in the past, and " * * * It will be up to the barber shop to put in its own meter and pay direct to the power company for such electricity. * * *" Mr. Clark, the defendant, testified he did not install his own meter because it was too expensive in that it would have cost him more than $300 to do so. Mr. Nichols also testified that although the procedure being followed by the Plains Hotel was against the rules and regulations of the power company there was no penalty for such violation. He further testified that the hotel could have billed the barber shop for electricity used by including it in the rent. It further appears from the record that neither the plaintiff nor the defendants were aware of the power company rule until May of 1970. We find nothing in the rule which says or implies that if charges were made in violation of the rule such sums would have to be refunded. It is also clear that both parties considered the defendants were, in addition to the $200 per month rental, to pay for electricity and telephone service, and for many years so conducted themselves. If there was any violation of the power company rules, or those of the Public Service Commission, it was between them and the plaintiff. As Mr. Nichols of the power company said, they had no contract or agreement with the defendants. The power company was not a party to any agreement between the plaintiff, Plains Hotel, and the defendants' barber shop.

It was also noted that the defendants did not appeal, even though the judgment ordered that they take nothing on their counterclaim. The only claim made by the defendants that they had paid the rent for the 10 months in question was that they had done so by having paid more than they should have to the plaintiff, which was in the nature of a counterclaim. However, since the counterclaim was dismissed they cannot now assert it. The record is clear that defendants were to pay $200 per month as rent and that they did not do so for 10 months. Since they had no counterclaim the plaintiff is entitled to judgment for 10 months' rent at $200 per month for a total of $2,000.

In their answer and counterclaim the defendants, as their first counterclaim, alleged the Plains Hotel Company had leased the building containing the barber shop from the Wyoming Realty Company, which then owned the building. The Plains Hotel Company then entered into a sublease with the defendants. They alleged and argued that under the terms of such lease the Plains Hotel Company was to pay for all utilities. The lease between the Wyoming Realty Company and the Plains Hotel Company is not in the record and we find only casual comment to it by one of the witnesses. There is therefore nothing in the record to support this contention by the defendants. Even if such contention was supported we fail to see how it could be material because the plaintiff succeeded to all the interests of both former companies. He purchased the real property formerly owned by the Wyoming Realty Company, and he acquired all the rights of the Plains Hotel Company which previously leased the property from the Wyoming Realty Company.

The trial court was correct in dismissing the defendants' counterclaim, but it should not have dismissed the plaintiff's complaint. That portion of the trial court's judgment that defendants take nothing on their counterclaim is affirmed, and that portion of the judgment that plaintiff take nothing on his complaint is reversed with instructions that judgment be entered in favor of the plaintiff and against the defendants for the sum of $2,000.

Affirmed in part and reversed in part with instructions.

McINTYRE, J. (Chief Justice at time of oral argument) took no part in the consideration or decision in this case.